UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XUEMEI MA (A-Number: 246-469-828), Petitioner, v. CHRISTOPHER CHESTNUT, *et al.*, Respondents. | Case No. 1:26-cv-6465-DC-JDP<br>FINDINGS AND RECOMMENDATIONS |

Petitioner, Xuemei Ma, a citizen of China, seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that her immigration detention without a bond hearing violates the law. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner is a citizen of China who entered the United States without permission on April 26, 2022. ECF No. 6 at 10. She filed an asylum claim on January 20, 2023. *Id.* On March 15, 2023, petitioner was arrested for local misdemeanors that were dismissed on July 16, 2024. *Id.* at 10, 19, 22. On March 26, 2026, petitioner went to the immigration office in Tustin, California, where she was scheduled for an asylum interview. ECF No. 6 at 9. Immigration officers apprehended her instead and served her with a notice to appear. *Id.* at 9-10. The notice to appear alleges that petitioner is an "alien present in the United States without being admitted or paroled."

*Id.* at 1. Two days later, USCIS closed her asylum application and referred her to an immigration judge. *Id.* at 9. ICE has held petitioner in custody since that date without a bond hearing. *Id.* at 12.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that her custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that her detention without a bond hearing violates the law. ECF No. 1 at 3. Respondents' position is that petitioner was detained under 8 U.S.C. § 1225(b)(2)(A). ECF No. 6 at 1. Respondents concede that *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), holds that section 1226(a) applies to noncitizens, like petitioner, who are arrested in the interior of the United States.[1] *Id.* Respondents do not dispute any of petitioner's factual allegations. Respondents do not assert that they afforded petitioner any of the protections

[1] On July 30, 2026, the Court of Appeals held that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165. Because the mandate has yet to issue, the court takes advisory notice of this ruling. *See* Fed. R. App. Pro. 41. This holding accords with five other Courts of Appeals. *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258, 1262 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1246 (10th Cir. 2026); *Cirrus Rojas v. Olson*, No. 25-3127, __ F.4th __, 2026 WL 2198315, at *2 (7th Cir. July 30, 2026).

provided by section 1226(a) and its implementing regulations.

Under section 1225(b)(2)(A), applicants "seeking admission" to the United States are subject to mandatory detention: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . ." 8 U.S.C. § 1225(b)(2)(A). Critically, no bond hearing is provided for a noncitizen detained under this section. *Id.* By contrast, "[u]nder § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

For decades, the government applied section 1226(a)—and not section 1225(b)(2)(A)—to noncitizens apprehended in the interior of the United States. *See id.* at 1196 ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal."). In July 2025, however, the Department of Homeland Security ("DHS") revisited its legal position and now maintains, as in this case, that applicants for admission within the meaning of section 1225(a) are subject to mandatory detention under section 1225(b).

This issue is one of statutory interpretation, and so I begin with the plain text of the Immigration and Nationality Act. *See United States v. Lillard*, 935 F.3d 827, 833-34 (9th Cir. 2019). Section 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). There is only one exception to mandatory detention: a noncitizen may be paroled into the United States "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

While the text of section 1225(b)(2)(A) limits its reach to applicants "seeking admission," section 1226(a) does not include the same qualifying language. Section 1226(a) provides that, for a noncitizen who is arrested and detained "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the

noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole."[2] 8 U.S.C. §§ 1226(a)(1)-(2).

Respondents state that ICE detained petitioner and denied her a bond hearing pursuant to section 8 U.S.C. § 1225(b).[3] ECF No. 6 at 1. They concede that under *Rodriguez Vazquez* the proper detention authority should have been 8 U.S.C. § 1226(a). *Id.* I find that the government's interpretation of section 1225 and application of that section to petitioner violates the rule against surplusage in three ways. First, for section 1225(b)(2)(A)'s mandatory detention to apply, "a noncitizen must (1) be an applicant for admission, (2) be 'seeking admission', and (3) be 'not clearly and beyond a doubt entitled to be admitted.'" *J.S.H.M. v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, *11 (E.D. Cal. Oct. 16, 2025). If, as the government argues, all "applicants for admissions" were also individuals "seeking admission," the phrase "seeking admission" would be unnecessary. The government's reading, therefore, runs contrary to the rule against surplusage. *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall be superfluous, void, or insignificant.").

Second, the government's reading cannot be squared with the text of section 1226. Were it possible to interpret section 1225(b)(2)(A) in the manner favored by the government, section 1226(a)'s requirement that noncitizens be afforded bond hearings—arguably the section's centerpiece—would serve no purpose because the government would be allowed to detain all "applicants for admission" under section 1225(b)(2)(A). Further, as noted, under section 1226(c), Congress mandated the detention of certain categories of noncitizens. 8 U.S.C. § 1226(c). If, as

---

[2] Section 1226(c) mandates detention of noncitizens falling into "one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289. There is no argument or evidence suggesting that this section applies to petitioner.

[3] Respondents also note that petitioner withdrew a prior request for a bond hearing in immigration court. *See* ECF No. 6 at 1, 12. Respondents' detention of petitioner under section 1225(b) means that the immigration court would have determined that it lacked jurisdiction to consider bond. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (BIA 2025). Accordingly, petitioner's futile prior request for an immigration bond hearing, and the subsequent withdrawal of that request, do not alter my analysis.

the government now contends, section 1225(b)(2)(A) can be applied to all noncitizens who are inadmissible, section 1226(c) would also be superfluous.

Third, the Laken Riley Act ("LRA")—passed in January 2025—would also be rendered superfluous. The LRA amended section 1226(c) to add new categories of mandatory detention. *See Garcia v. Noem*, No. 25-cv-2180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025). Under the government's theory of section 1225(b)(2)(A), the LRA would be unnecessary; if mandatory detention for all unauthorized noncitizens were already permitted—and, in fact, required—by section 1225(b)(2)(A), the amendment would be surplusage. "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995).

Respondents' theory, essentially, is that both sections 1226(a) and 1226(c) have been taken out of commission, not by any new law or act of Congress, but by a shift in executive branch policy. This interpretation collides squarely with the rule against surplusage. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

I also find that the government's interpretation runs contrary to the DHS's longstanding practice prior to July 2025. As noted, the government previously interpreted these provisions in the manner argued by petitioner. Prior agency practice, though not dispositive, may inform this court's determination of law. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is."). Other courts have emphasized the persuasive value of the DHS's "longstanding agency practice." *See Rodriguez*, 779 F. Supp. 3d at 1259 ("Congress enacted the LRA against the backdrop of longstanding agency practice applying Section 1226(a) to inadmissible noncitizens already residing in the country.").

Finally, I note that arguments substantially similar to those made by the government here have been rejected by a large majority of district courts nationwide. *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases). The government's argument also runs contrary to *Jennings*, which held that section 1225(b) "applies primarily to aliens seeking entry

into the United States," whereas sections 1226(a) and (c) "authorize[] the Government to detain certain aliens already in the country pending the outcome of removal proceedings . . . ." 583 U.S. at 289, 297. While the government's interpretation was endorsed by the Board of Immigration Appeals ("BIA") in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), the persuasive power of an agency ruling is limited. *See Loper Bright*, 603 U.S. at 400.

Petitioner was arrested when she appeared for her scheduled asylum interview at the Tustin immigration office. ECF No. 6 at 9. Respondents concede that petitioner's detention falls under *Rodriguez Vazquez*. ECF No. 6 at 1. In other words, while the government continues to argue that petitioner is an "applicant for admission" under immigration law, it recognizes that binding authority does not support this position. Indeed, that position has been rejected by courts across the nation. *See Morales-Flores v. Lyons*, No. 1:25-cv-1640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases). Accordingly, I find that petitioner's detention should have been governed by section 1226 and not, as respondents advance, by section 1225.

Given this finding, I must determine the appropriate remedy. Petitioner requests immediate release. ECF No. 1 at 4. Respondents argue that "[p]etitioner is . . . entitled to seek a custody redetermination hearing before an immigration judge."[4] ECF No. 6 at 1.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). Moreover, where the government has erroneously applied section 1225(b) to a petitioner, courts have ordered immediate release. *See, e.g.*, *Morillo v. Albarran*, No. 1:25-cv-1533-DJC-AC, 2025 WL 3190899, at *5 (E.D. Cal. Nov. 15, 2025); *Cortes Cortes v. Warden of*

---

[4] In *Matter of Yajure Hurtado*, the BIA held that immigration judges lack jurisdiction to hear a request for bond where the noncitizen is detained under section 1225(b)(2)(A). 29 I. & N. Dec. at 228-29. As noted, respondents assert that petitioner is detained under this section. ECF No. 6 at 1. Respondents provide no assurances that, if petitioner requested a bond hearing, an immigration judge would have the authority to provide her one. *See id.*

*the Golden State Annex Det. Facility*, No. 1:26-cv-6609-DC-JDP, 2026 WL 2494984, at *3 (E.D. Cal. Aug. 25, 2026); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-5661-DAD-SCR, 2026 WL 2294963 (E.D. Cal. Aug. 10, 2026). In *Feng v. Lyons*, the court held that a delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and found that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right." No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (citations omitted).

I do not find that petitioner's misdemeanor arrest from March 15, 2023, changes this analysis. The matter was "nol-prossed" by the city prosecutor on July 16, 2024. ECF No. 6 at 22. Immigration authorities scheduled an interview on petitioner's asylum application for March 26, 2026, years after that arrest and dismissal. ECF No. 6 at 9. Respondents do not argue that petitioner is a flight risk or danger. Petitioner voluntarily attended her asylum interview and was detained on a basis that violates the INA. *Id.* Respondents do not "reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from violating [p]etitioner's due process rights." *See Pineda v. Chestnut*, No. 1:25-cv-1970-DC-JDP, 2026 WL 25510, at *6 (E.D. Cal. Jan. 5, 2026) (citing *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983)). Petitioner's due process rights have been violated such that the provision of a bond hearing five months after her detention is constitutionally insufficient. *See Feng*, 2026 WL 472635, at *1. Under these circumstances, I find that the "typical remedy" of release is appropriate. *See Munaf*, 553 U.S. at 693.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents be ordered to immediately release petitioner (A-Number: 246-469-828) from their custody. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter in accordance with 8 U.S.C. § 1226(a) and its implementing regulations, at which

petitioner's eligibility for bond must be considered. This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: August 31, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE